# United States District Court
# District of Massachusetts

UNITED STATES OF AMERICA,

    v.                              CASE NO. 2009-PO-0476-RBC

ANDREW M. SULLIVAN,
    Defendant.

# *MEMORANDUM AND ORDER ON GOVERNMENT'S REQUEST FOR LEAVE TO FILE A DISMISSAL OF VIOLATION NOTICE*

COLLINGS, U.S.M.J.

## *I. Introduction*

It sometimes happens that small cases raise issues of fundamental importance in our system of justice; this case happens to be an example.

## *II. Facts*

The facts are straightforward. The defendant, Andrew M. Sullivan, who resides in Washington, D.C. but, according to his attorney, owns a home in Provincetown, Massachusetts, was in an area of the Cape Cod National Seashore

on July 13, 2009 when he was charged by a National Park Service Ranger with a violation of 36 C.F.R. § 2.35(b)(2) which prohibits possession of a controlled substance on National Park Service lands. Specifically, Mr. Sullivan was charged with possession of marijuana. Title 36 C.F.R. § 2.35(b)(2) prohibits "the possession of a controlled substance...."[1] The maximum penalty upon conviction of the offense is a fine of $5,000, six months imprisonment, a $25 processing fee and a $10 special assessment. As such, it is classified under the federal criminal code as a Class B misdemeanor;[2] it is also denoted a "petty offense."[3]

The charge was contained in a citation which the Ranger issued to Mr. Sullivan on July 13, 2009. The citation, which was on a form denoted "United States District Court Violation Notice," required Mr. Sullivan either to appear in the United States District Court when notified to do so or to forfeit collateral in

---

[1] Title 36 C.F.R. § 1.4(a) provides, in pertinent part, that "*[c]ontrolled substance* means a drug or other substance...included in schedules I, II, III, IV, or V of part B of the Controlled Substance Act (21 U.S.C. 812)...." "Marihuana" is a Schedule I controlled substance. Title 21 U.S.C. § 812, Schedule I, (c)(10).

[2] *See* Title 18 U.S.C. § 3559(a)(7).

[3] *See* Title 18 U.S.C. § 19.

the amount of $125.00.[4]

Mr. Sullivan was notified to appear before the Court on September 2, 2009 at Hyannis at a session at which the undersigned was to preside. On August 26, 2009, the United States Attorney for the District of Massachusetts filed a "Dismissal of Complaint" [sic] seeking leave to file a dismissal of the Violation Notice issued to Mr. Sullivan because "further prosecution of the violation would not be in the interest of justice."

Because the reason given by the United States Attorney was so general ("interest of justice"), the Court scheduled a hearing on the request for leave to file the dismissal and directed that Mr. Sullivan appear. He did so on September 2, 2009 at Hyannis. He was represented by Robert Delahunt, Jr., Esquire, of Boston. The United States Attorney was represented by Assistant United States Attorney James F. Lang, Acting Deputy Chief of the Criminal Division.

When the case was called, the Court expressed its concern that a dismissal would result in persons in similar situations being treated unequally before the

---

[4] See Rule 14(a), Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts ("A person who is charged with a petty offense may, in lieu of appearance, post collateral in the amount indicated for the offense, waive appearance before a magistrate judge, and consent to forfeiture of collateral…").

law. The Court noted that persons charged with the same offense on the Cape Cod National Seashore were routinely given violation notices, and if they did not agree to forfeit collateral, were prosecuted by the United States Attorney. In short, the Court explained that there was no apparent reason for treating Mr. Sullivan differently from other persons charged with the same offense. In fact, there were other persons who were required to appear on the September 2nd docket who were charged with the same offense and were being prosecuted.[5]

Both Assistant U.S. Attorney Lang and Attorney Delahunt explained that Mr. Sullivan is a British citizen who is applying for a certain immigration status in the United States. They stated that lawyers expert in the field of immigration law had advised them that if Mr. Sullivan were to forfeit the $125.00 in collateral, it would have an adverse effect on his application. The Court noted that Mr. Sullivan had been charged with the crime at the time the Violation Notice issued and that even if the Court did grant leave to dismiss the Violation Notice, Mr. Sullivan, if asked by immigration authorities, would have to answer truthfully that he had been charged with a crime involving controlled substances. In these circumstances, the Court asked the attorneys to explain

---

[5] In point of fact, there were three other defendants on the list charged with the same offense.

why forfeiting collateral would have any additional adverse effect on his application. Neither attorney could answer the Court's query except to say that the lawyers they had consulted who practice immigration law said it would.

In these circumstances, the Court indicated that it would like Attorney Delahunt to file a brief answering the Court's query. Before Attorney Delahunt could reply, Assistant U.S. Attorney Lang stated that the Court was without power to ask for the brief, or, in fact, to inquire further into the decision of the United States Attorney to dismiss the charge.[6] He asserted, quite correctly, that the United States Attorney has broad discretion as to when to dismiss a criminal charge and that the power of the Court in these circumstances is limited and able to be exercised only in special circumstances.[7]

The Court, still concerned about the apparent derogation of the principle that all persons stand equal before the law, decided to take the matter under advisement.

---

[6] Research conducted by the Court after the hearing indicates that Assistant U.S. Attorney Lang is quite incorrect in his statement that the Court had no power to inquire. *See United States v. Ammidown*, 497 F.2d 615, 620 (D.C.Cir., 1973)("…[I]n the exercise of its responsibility [under Rule 48(a), Fed. R. Crim. P.], the court will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons *and underlying factual basis.*" (emphasis supplied; footnote omitted).

[7] *See* discussion of the Court's power in this regard at pp. 8-10, *infra*.

### III. A Brief Detour

Before going any further, it is important to state with clarity those matters about which the Court is not concerned.

First, the Court is well aware of political discussion over whether the possession of a small amount of marijuana should be illegal. Whether or not the law should be changed to make such possession legal is a matter entrusted to state and federal lawmakers, and ultimately to the voters.[8] The Court's duty is to uphold the law as it is, and unless and until the law is changed, the Court must enforce it, regardless of whether or not the judge personally has any opinion as to how the law should be changed.

Second, the Court would not be concerned with any exercise of discretion by the United States Attorney not to prosecute the possession of small amounts of marijuana. The United States Attorney certainly has discretion to determine how best to allocate the resources of his office and could, if he deemed it appropriate, elect to focus those resources on more serious crimes while declining to prosecute the type of violation which Mr. Sullivan faces. However,

---

[8] The Court notes that voters in Massachusetts recently changed the penalty for possession of small amounts of marijuana from a criminal to a civil sanction. Possession of marijuana is still illegal in Massachusetts but the sanction for violation is a civil rather than a criminal penalty. Of course, on the Cape Cod National Seashore, a federal property, the federal regulation cited, *supra,* which provides for a criminal sanction for possession of marijuana is applicable and is unaffected by the change in Massachusetts state law.

from all that appears, the United States Attorney has not taken the position that persons who possess marijuana on federal property will not be prosecuted; rather, those persons are prosecuted routinely.

### IV. *The Issue Raised in the Instant Case*

In the Court's view, in seeking leave to dismiss the charge against Mr. Sullivan, the United States Attorney is not being faithful to a cardinal principle of our legal system, i.e., that all persons stand equal before the law and are to be treated equally in a court of justice once judicial processes are invoked. It is quite apparent that Mr. Sullivan is being treated differently from others who have been charged with the same crime in similar circumstances.

If there were a legitimate reason for the disparate treatment, the Court would view the matter differently. But the United States Attorney refused to allow the Court to inquire into why, in the circumstances of this case where Mr. Sullivan had already been charged with the crime, either a forfeiture of collateral or an adjudication would make a difference in the immigration application.

But there is more. If, in fact, a determination that Mr. Sullivan had possessed marijuana is a factor which, under immigration law, the immigration

authorities are legally charged with taking into account when deciding Mr. Sullivan's application, why should the United States Attorney make a judgment that, despite the immigration law, the charge should be dismissed because it would "adversely affect" his application?[9] If other applicants for a certain immigration status have had their applications "adversely affected" by a conviction or a forfeiture of collateral for possession of marijuana, then why should Mr. Sullivan, who is in the same position, not have to deal with the same consequences?

In short, the Court sees no legitimate reason why Mr. Sullivan should be treated differently, or why the Violation Notice issued to him should be dismissed. The only reasons given for the dismissal flout the bedrock principle of our legal system that all persons stand equal before the law.

---

[9] Again, the Court takes no position on what the law should be regarding the effect of a prior possession of marijuana on an application for immigration status. That is a matter which is in the province of the Congress. Similarly, the Court takes no position on how the immigration authorities should exercise their discretion when presented with applications by persons who have either been convicted or forfeited collateral for possession of marijuana. If the law gives the immigration authorities the discretion to determine the weight, if any, to be given this circumstance in making their decision on the applications, presumably authorities could determine that the application is not to be adversely affected.

## V. The Bottom Line

In urging fidelity to these principles of our legal system, the Court must also be faithful to the constitutional principle of separation of powers - that the executive branch of the federal government (of which the United States Attorney is a part) and the judicial branch (of which the Court is a part) have both powers and limitations on their powers.

The law with respect to the limit of a Court's power to refuse to grant leave to the United States Attorney to dismiss a criminal matter is not entirely clear. The Supreme Court has written on the subject but declined to decide the issue. Over thirty years ago, the Court commented that:

> The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection. See, *e. g., United States v. Cox*, 342 F.2d 167, 171 (CA5), cert. denied, sub nom. *Cox v. Hauberg*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); *Woodring v. United States*, 311 F.2d 417, 424 (CA8), cert. denied sub nom. *Felice v. United States*, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963). But the Rule has also been held to permit the

> court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest. See *United States v. Cowan*, 524 F.2d 504 (CA5 1975); *United States v. Ammidown*, 162 U.S.App.D.C. 28, 33, 497 F.2d 615, 620 (1973). It is unnecessary to decide whether the court has discretion under these circumstances, since, even assuming it does, the result in this case remains the same.

*Rinaldi v. U.S.*, 434 U.S. 22, 30 n.15 (1977).

Obviously, the instant case does not involve the need to protect Mr. Sullivan from "prosecutorial harassment" since the United States Attorney, in seeking leave to dismiss the charge, is doing precisely what the defendant wants. Rather, the issue in this case is that which the Supreme Court declined to decide, i.e. whether the Court can refuse leave if, in the words of the Supreme Court, the request for leave "...is prompted by considerations clearly contrary to the public interest." *Id.*

While several Circuits have written on the subject since the *Rinaldi* decision, no consensus seems to have emerged, and the First Circuit has not had the opportunity to render its view. A good summary of the law in the various circuits is contained in the case of *United States v. Nixon,* 318 F. Supp. 2d 525, 527-30 (E.D. Mich., 2004). The Seventh Circuit Court of Appeals had

the most recent opportunity to write on the issue in the case of *In Re United States of America,* 345 F.3d 450 (7 Cir., 2003). In that case, the Court held that a court would exceed the limits of judicial power under the Constitution if it refused to grant leave to dismiss a criminal charge on the grounds that the dismissal is "contrary to the public interest." *In Re United States,* 345 F.3d at 452-454.

The end result is that fidelity to the law requires that the Court grant leave to the United States Attorney to dismiss the Violation Notice against Mr. Sullivan, and the Court hereby grants such leave.[10] That the Court must so act does not require the Court to believe that the end result is a just one.

/s/ Robert B. Collings
ROBERT B. COLLINGS
United States Magistrate Judge

September 10, 2009.

---

[10] The Court also notes that the United States Attorney would have the last word in any event. If the Court were to refuse to dismiss the charge, the United States Attorney could merely decide not to present any evidence at the trial which would require the Court to enter a judgment of acquittal. *See United States v. Greater Blouse, Skirt & Neckwear Contractors. Ass'n,* 228 F. Supp. 483, 489-90 (S. D. N. Y., 1964). Nevertheless, the Third Circuit has noted that "[e]ven though a judge's discretion under Rule 48(a) is severely cabined, the rule may serve an important interest as an information-and accountability-producing vehicle." *In Re Richards,* 213 F.3d 773, 788 (3 Cir., 2000). The Court is hopeful that its inquiry into the Government's reasons for seeking leave to dismiss the charge against Mr. Sullivan has served those purposes.